# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| Suvare Thomas, | : | Case No. 1:08CV1365 |
| | : | |
| Plaintiff | : | Judge Kathleen O'Malley |
| | : | |
| v. | : | Magistrate Judge David S. Perelman |
| | : | |
| Commissioner of Social Security, | : | **REPORT AND RECOMMENDED** |
| | : | **DECISION** |
| Defendant | : | |

Before reaching the merits of this action brought under 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the defendant's final determination denying plaintiff's application for Supplemental Security Income benefits (SSI), 42 U.S.C. §1381 et seq., which carries a protective filing date of August 18, 2004, there is a procedural matter to be considered, the resolution of which bears upon the merits.

The plaintiff had been awarded SSI in December 1994, at age 13, based upon mental retardation. When he reached age 18 his case was reviewed at the state agency level, and it was concluded that he was no longer disabled as of March 1, 2000. The plaintiff requested de novo review by an Administrative Law Judge (ALJ), and the matter was assigned to ALJ Guzzo. On June 24, 2003 ALJ Guzzo dismissed the plaintiff's request for a hearing, as a consequence of the failure of the plaintiff and his mother to appear at six scheduled hearings. On December 4, 2003 the Appeals Council denied review of that dismissal.

Following initiation of this action on February 4, 2009 this Court entered the following Memorandum Opinion and Order:

> On January 26, 2009 this Court granted plaintiff's counsel's motion for leave to supplement the record by including evidence that had been generated in the context of a prior disability benefit claim by the plaintiff, based on the representation that such evidence was germain and relevant to the issues in this action. That order was entered on the day the motion was filed, and without waiting for a response from the defendant.
>
> Defense counsel has now filed an objection to that motion which suggests to this Court that the evidence may not bear upon the merits of the defendant's final determination on the claim which underlies this action, and that this Court acted too hastily in granting the motion.
>
> Therefore, this Court had determined to let the matter stand in its present posture, and await briefing on the merits. This Court expects that in that briefing the relevance of that evidence will be addressed, which will present context for the question of the propriety of this Court's permitting plaintiff's counsel to supplement the record. If at that time this Court is satisfied that the additional evidence should not have been received this Court will either order it stricken from the record or simply ignore it in addressing the merits of the action.

The "supplemental record" consists solely of evidence generated in the context of the aborted proceeding before ALJ Guzzo. That evidence bears exhibit numbers 1 to 35.

At the outset of the evidentiary hearing before the ALJ whose adverse determination upon the plaintiff's 2004 application represents the final determination which is the subject of this action the ALJ stated that she was admitting into evidence "Exhibits B-1A through B-4A, B-1B through B-5B, B1-D through B5-D, B1-E through B11E, B1-F through B-3F." Shortly thereafter the ALJ alluded to the prior proceeding before ALJ Guzzo and stated "I've not admitted any of those records into the file because I didn't review them."

The issue before the court in this proceeding is whether the defendant's final determination denying plaintiff's 2004 application is supported by substantial evidence in the record before the

2

ALJ who ruled upon that application.  As that ALJ specifically stated that she had not reviewed the evidence generated in the proceeding before ALJ Guzzo and was not admitting any of that evidence into the record it follows that the "supplemental record" cannot be given any consideration in this action.  This Court will now order it stricken from the record and, therefore, has given no credence to the arguments made in plaintiff's submission on the merits predicated upon that evidence.

Turning back to the merits of this action, in a Disability Report - Adult which accompanied the plaintiff's 2004 application the questions "What are the illnesses, injuries or conditions that limit your ability to work?" and "How do your illnesses, injuries or conditions limit your ability to work?" were answered "Learning disability evaluated via school records" and "I can't read or spell."

Upon denial of plaintiff's claims on the state agency level hearing de novo before an Administrative Law Judge (hereinafter ALJ) was requested.  Evidentiary hearing, at which plaintiff was represented by counsel, was held on October 10, 2006.  Also testifying at that proceeding was a vocational expert, Mr. Bruce Holderead.

At that hearing the ALJ asked plaintiff's counsel "What are the severe impairments we're dealing with here today?" to which counsel responded "Mild mental retardation, dysthymia, and illiteracy," and the plaintiff's testimony was essentially that he could not work because of his limited intellect.  When asked by his counsel "Is there anything else you would like to tell the Judge about your condition which would help her make a decision on your claim?" the plaintiff's answer was "I can't read and write. . .can't read and write or count."  He acknowledged that he had no physical limitations.

In examining the vocational expert the ALJ posed the following hypothetical question:

> Assume an individual the same vocational profile as the Claimant.
> We have a younger individual and, although he went through the 8th

>grade, I'm going to consider him illiterate. So we have a younger individual who is illiterate. he has o exertional limitations and he has no physical non-exertional limitations. He can only understand, remember, and carry out simple instructions, routine or repetitive tasks. He can only perform low stress work meaning no high production or rapid production quotas. And he can only perform work with job tasks shown by visual demonstration since he does not read well. Would you be able to identify jobs that this individual could perform?

The vocational expert identified three jobs such an individual could perform, those being car wash attendant, busser and cleaner housekeeping. When asked by plaintiff's counsel whether a person with scores on the Wechsler Memory Scale which the plaintiff had been assigned upon a psychological evaluation could perform those jobs the witness, while stating that he was neither a psychologist or a medical expert, responded that they were very simple occupations and he believed that such an individual could perform them.

On November 27, 2006 the ALJ entered her opinion denying plaintiff's claims. That decision became defendant's final determination upon denial of review by the Appeals Council on May 5, 2008. The ALJ's "Findings," which represent the rationale of decision were:

>1. The claimant has not engaged in substantial gainful activity since August 17, 2004, the date of his application for supplemental security income.
>
>2. The medical evidence establishes that the claimant has severe impairments: borderline intellectual functioning and learning disability (developmental reading disorder), but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.
>
>3. The claimant's subjective complaints are not supported by the objective evidence in the record.
>
>4. The clamant has the residual functional capacity to perform the nonexertional requirements of work except for work involving

    more than simple instructions, routine or repetitive tasks, more than low stress work, high production quotas a [sic] rapid production quotas, or work which requires reading and does not have visual demonstration of job tasks. There are no exertional limitations and no physical non-exertional limitations (20 CFR §416.945).

5. The claimant does not have any past relevant work.

6. The claimant is 25 years old, which is defined as a younger individual (20 CFR §416.963).

7. The claimant has a limited education but the evidence establishes that he is illiterate (20 CFR §416.964).

8. The claimant dos not have any acquired work skills which are transferable to the skilled or semi skilled work functions of other work (20 CFR §416.968).

9. If the claimant's nonexertional limitations did not significantly compromise his ability to perform work at all exertional levels, section 204.00, Appendix 2, Subpart P, Regulations No. 4 indicates that a finding of "not disabled: would be appropriate. If his capacity to work at all levels were significantly compromised, the remaining work which he would functionally be capable of performing would be considered in combination with his age, education, and work experience to determine whether a work adjustment could be made.

10. Considering the types of work which the clamant is still functionally capable of performing in combination with his age, education and work experience, he can be expected to make a vocational adjustment to work which exists in significant numbers in the national economy. Examples of such jobs are car wash attendant, busser, and cleaner, housekeeping.

11. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §416.920(a)(4)(v)).

    The standards which control on a review of this nature were summarized by the Sixth Circuit in <u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984) as follows:

> Judicial review of the Secretary's decision is limited in scope to determining whether the findings of fact made by the Secretary are supported by substantial evidence and deciding whether the Secretary employed the proper legal criteria in reaching her conclusion, Walston v. Gardner, 381 F.2d 580, 585 (6th Cir. 1967). This Court may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility, Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972). Rather "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. §405(g).
>
> The Supreme Court has stated that "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantiality of the evidence must be based upon the record taken as a whole. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980), citing Futernick v. Richardson, 484 F.2d 647 (6th Cir. 1973). "Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the `substantiality of evidence must take into account whatever in the record fairly detracts from its weight'." Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978), quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474 (1951). "We may not focus and base our decision entirely on a single piece of evidence, and disregard other pertinent evidence." Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir. 1978).

In resolving the issue of whether the defendant's final determination is supported by substantial evidence the decision upon judicial review cannot turn upon whether the reviewing court agrees with the Secretary's determination. Indeed, the reviewing court may conclude that substantial evidence would support a final determination contrary to that arrived at by the defendant and yet be obliged to affirm the defendant's final determination. In Mullen v. Bowen, 800 F.2d 535, at 545 (6th Cir. 1986), the court cited with approval the following from Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984):

> The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject

>to reversal merely because substantial evidence would have supported an opposition decision.

The plaintiff's position on this appeal is that the ALJ should have found the plaintiff disabled under Listing 12.05C of the Listing of Impairments. That Listing provides for recognition of disability based upon:

>12.05 *Mental Retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period: i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
>The required level of severity for this disorder is met when the requirements in A, B, C. or D are satisfied.
>
>\* \* \*
>
>C. A valid verbal, performance, or full scale IQ of 60-70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

Considering that this Court cannot take into consideration the evidence generated in the proceeding before ALJ Guzzo, this issue hinges upon an evaluation performed by a clinical psychologist, Dr. Kenneth Felker, in November 2004. Dr. Felker found that the plaintiff possessed a full scale IQ of 70, a verbal IQ of 72 and a performance IQ of 72. Nevertheless, in his "Summary and Conclusion," Dr. Felker stated that the plaintiff was only moderately impaired in his ability to concentrate and attend to tasks, mildly to moderately restricted in his ability to understand and follow out instructions and carry out routine tasks, had a mild impairment in the ability to relate to others and deal with the general public, and that his ability to relate to work peers, supervisors and to tolerate the stresses of employment was moderately restricted.

In the body of her decision the ALJ addressed the question whether the plaintiff met or

equaled Listing 12.05C.  Therein she held:

>The objective medical evidence in the record establishes that the claimant suffers from severe borderline intellectual functioning, and a learning disability (developmental reading disorder).  However, the evidence in the record establishes that the claimant does not have an impairment which meets or equals any of the Listing of Impairments located in Appendix 1, Subpart P, Regulations No. 4.  20 CFR 416.929(c, d).
>
>The evaluation of disability on the basis of mental disorders requires documentation of medically determinable impairments, as well as consideration of the degree of limitation such impairments may impose on an individual's ability to work, and whether these limitations have lasted or are expected to last for a continuous period of at least 12 months (20 CFR 416.920a).  Here, the claimant does meet the paragraph A diagnostic criteria of Listings 12.02 (organic mental disorders) and 12.05 (mental retardation) based on his diagnosis of developmental reading disorder/learning disorder and borderline intellectual functioning.  The evidence establishes that the claimant was in special education classes when he was in school.  He only completed school through the eight grade.  he has not obtained his GED.  He underwent a consultative psychological evaluation performed by Dr. Felker on November 10, 2004 and was administered the WAIS-III and achieved a full-scale IQ of 70 with verbal IQ of 72 and performance IQ of 72.  Dr. Felker felt that the claimant's IQ scores placed him in the borderline range of intellectual functioning.  While the claimant's attorney has argued that the claimant's IQ score of 70 establishes that the claimant falls in the mild mental retardation range, and therefore, would meet Listing 12.05C, there has been no diagnosis of mental retardation since age 18 and the evidence does not establish deficits in adaptive functioning for the claimant to be considered mentally retarded.  At Dr. Felker's evaluation, the claimant was also administered the Wide Range Achievement Test-3 Reading Recognition test and obtained scores which placed him at a first grade level.  Dr. Felker concluded that he had a developmental reading disorder based on these results.  His low scores in IQ testing may be attributed to his reading problems.
>
>The evidence does not indicate that the claimant is limited in the extent he would meet the paragraph B functional criteria as is required to make a finding of disability pursuant to Listings 12.02, or 12.05 of Appendix I.  The evidence establishes that the claimant has

a mild restriction of activities of daily living.  At the claimant's hearing, he testified as to a number of activities of daily living.  he indicted that he is able to wash dishes, clean his room, take out the trash, and sweep.  He also stated that he watches television and plays video games.  He goes to the store with his brother.  He is able to take the bus.

The evidence establishes that the claimant also has mild difficulties in maintaining social functioning.  He told Dr. Felker that he was not very socially active but also stated that he likes to play basketball with his neighborhood friends.  At the evaluation, Dr. Felker concluded that the claimant's ability to relate to others in view of the general public showed some mild impairment.

The evidence establishes that the claimant has moderate difficulties in concentration, persistence and pace.  Dr. Felker concluded that the claimant showed a moderate impairment in his ability to concentrate and attend to tasks, particularly for sustained activities.  He also concluded that the claimant's ability to understand and follow instructions and to carry out routine tasks appeared to be mildly to moderately restricted.  The claimant alleged at this hearing that he cannot perform work which requires pace but this testimony is not credible based on Dr. Felker's evaluation and the evidence in the record that the clamant has worked at fast pace jobs in the past.  There have been no episodes of decompensation of extended duration established in the record.  The evidence does not establish the presence of the "C" criteria of Listing 12.02.

While Dr. Felker also diagnosed the claimant with a dysthymic disorder at the time of his evaluation, the claimant testified at his hearing that he suffers from depression, the evidence in the record does not establish that this is a severe impairment.  The evidence does not indicate that the claimant has ever been treated by a doctor for depression.  In fact, it should be noted that the claimant's attorney did not develop the record.  There are no treatment records, no new testing or reports from coworkers or employers regarding the claimant's ability to work in the evidence.  The claimant's attorney based the entire case on the fact that the claimant achieved a Full Scale IQ of 70 at Dr. Felker's evaluation and contended that Dr. Felker made a mistake in his diagnosis.

It can be concluded that evidence in the record establishes that the claimant retains the residual functional capacity to perform work which involves simple instructions, routine or repetitive task, low

>stress work with no high production quotas or rapid production quotas, and the claimant must perform work with job tasks which are shown by visual demonstration since he does not read well. He does not have any exertional limitations. He also does not have any physical non-exertional limitations.

This Court cannot find that the foregoing was beyond the ALJ's "zone of choice" as trier of the fact.

It is, accordingly, recommended that final judgment be entered in the defendant's favor.

s/DAVID S. PERELMAN<br>United States Magistrate Judge

DATE:   June 15, 2009

## OBJECTIONS

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).