**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SUVARE THOMAS,** | : | **Case No. 08-CV-1365** |
| **Plaintiff,** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : | |
| **COMMISSIONER OF SOCIAL SECURITY,** | : | <u>**OPINION & ORDER**</u> |
| **Defendant.** | : | |

This is an action for judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") denying the application of the Plaintiff, Suvare Thomas ("Thomas"), for Supplemental Security Income benefits ("SSI") under the Social Security Act, 42 U.S.C. § 1381 *et seq.* Pursuant to Local Rule 72.2(b), this matter was referred to Magistrate Judge David S. Perelman for preparation of a Report and Recommendation ("R&R"). In his R&R, the Magistrate Judge recommended that the Commissioner's final administrative decision be affirmed, and that final judgment be entered in the Commissioner's favor. (Doc. 27.) Thomas has filed a timely objection to the R&R (Doc. 28), and the Commissioner has filed a response to Thomas's objection (Doc. 30). For the reasons articulated below, the Court **OVERRULES** Thomas's objection, **ADOPTS** the R&R, and **AFFIRMS** the final administrative decision of the Commissioner denying Thomas's application.

## I.      BACKGROUND

The R&R accurately sets forth the factual and procedural background of this action.  (Doc. 28 at 1-5.)  In the interest of efficiency, therefore, the Court adopts the R&R's articulation of the relevant factual and procedural background and provides only the following summary and augmentation of the facts.

### A.      THE ADMINISTRATIVE PROCESS

Thomas filed his SSI application on August 17, 2004, alleging that he was disabled under Title II of the Social Security Act based on mental retardation, an impairment listed at 12.05 in Appendix 1 of the regulations promulgated under the Social Security Act.  20 C.F.R. § 416.920.  In late 2004 and early 2005, Thomas's application was denied initially and upon reconsideration at the state agency level.  Thomas then requested a *de novo* hearing before an ALJ.  In October of 2006, ALJ Cheryl Rini conducted an evidentiary hearing.  At the hearing, the ALJ solicited testimony from Thomas, who was represented by attorney Katherine Braun, and a vocational expert ("VE"), Bruce Holderead.  On November 27, 2006 the ALJ issued a decision unfavorable to Thomas.  In short, the ALJ concluded that Thomas did not meet the requirements of Listing 12.05(C),[1] mental retardation,

---

[1] Listing 12.05(C) provides as follows:

12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
        . . .

        C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; . . .

-2-

and was, therefore, not entitled to SSI benefits.  On May 5, 2008 the Appeals Council denied Thomas's request for review of ALJ Rini's decision, thereby rendering the ALJ's decision the final administrative decision of the Commissioner.

### B.    JUDICIAL REVIEW

On June 6, 2008, Thomas, still represented by Ms. Braun, sought this judicial review of the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  (Doc. 1.)  As noted, Thomas's action was referred to Magistrate Judge Perelman for preparation of a R&R.  (Doc. 27.) On January 7, 2009, the Commissioner filed his Answer to Thomas' Complaint (Doc. 8), as well as the Transcript of the proceedings before ALJ Rini.

#### 1.    Thomas' Motion to Supplement the Record

Shortly after the Commissioner filed his Answer, Thomas filed motions seeking to supplement the Transcript by adding the record of proceedings relating to Thomas' previous SSI determinations from 1994 and 2000.[2]  (Docs. 10, 13.)  Thomas' motion introduces an important procedural issue in this case that requires some background explanation.  In 1994, when he was a juvenile, Thomas was awarded SSI benefits based on a finding of mental retardation.  (*See* Record, Doc. 9 at 12-13.)  The case presently before the Court arose from the fact that, upon review of Thomas' entitlement to SSI benefits in 2000, the Commissioner determined that Thomas was no longer disabled and discontinued his SSI benefits.  Thomas challenged that decision via the state agency process and, ultimately, by requesting a hearing before an ALJ.  His request for review was eventually dismissed by ALJ Guzzo in 2003, however, after Thomas and his mother failed to appear

---

[2]  Initially, Thomas filed a motion for an order requiring the Commissioner to file the supplemental record.  (Doc. 10.)  Several days later, Thomas filed a motion to withdraw his initial motion and seeking leave to file the supplemental record himself.  (Doc. 13.)  The only difference between the motions relates to which party would file the supplemental record.

at six hearings ALJ Guzzo had scheduled.  The supplemental record that Thomas requests leave to submit includes records from his 1994 and 2000 SSI benefits determinations.  Thomas argues that these records should be considered in this case because they "support a diagnose [sic] of mental retardation;" i.e., "provide[ ] support for his claim that he meets the requirements of Listing 12.05C." (Doc. 10 at 1.)  The Commissioner opposes Thomas' motion to supplement the record on several grounds, which will be discussed below.  Thomas has filed a reply in support of the motion to supplement.  The Magistrate Judge ultimately concluded that this motion should be resolved within the context of the opinion and order on the merits (Doc. 21),[3] and, in his R&R, recommends that the motion to supplement be denied for the reasons discussed below (Doc. 27).

### 2.    The Magistrate Judge's R&R

The Magistrate Judge's R&R recommends that the Commissioner's decision be affirmed, and that final judgment be entered in the Commissioner's favor.  (Doc. 27.)  Specifically, in his R&R, the Magistrate Judge resolves the two distinct issues raised by Thomas in this action.  (*Id.* at 4-5.)  First, Magistrate Judge Perelman concludes that the supplemental record should be stricken from the record of this case.  The Magistrate Judge notes that ALJ Rini stated on the record that she had not admitted any of the records in the prior proceedings because she did not review those records.  He reasons that this Court's review of whether the ALJ's decision is supported by substantial evidence must be based on the record before the ALJ. Second, Magistrate Judge Perelman concludes that the ALJ's decision denying SSI benefits to Thomas was supported by substantial

---

[3] The Magistrate Judge initially interpreted Thomas' motion to supplement as involving purely procedurally issues and granted it in a marginal entry before the Commissioner filed his response in opposition.  Thomas then filed the supplemental record (Doc. 17).  Upon review of the Commissioner's response in opposition, however, the Magistrate Judge issued an order explaining that his ruling on the motion to supplement had been premature and, instead, he would address the motion in the context of his R&R.  (Doc. 21.)

evidence; i.e., it is within the "zone of choice" of the ALJ.  The Magistrate Judge first summarizes the record evidence and the standard of review, noting that clinical psychologist Dr. Kenneth Felker found Thomas to be moderately restricted and impaired as a result of his low IQ and that the vocational expert ("VE") identified three jobs that a hypothetical individual with Thomas' profile could perform – car wash attendant, busser, and cleaner/housekeeping.  Magistrate Judge Perelman's subsequent merits analysis consists of an extensive block quote from the ALJ's decision, followed by the conclusion that "[t]his Court cannot find that the foregoing was beyond the ALJ's "zone of choice" as trier of the fact."  (Doc. 27 at 10.)

### 3. Objections to the R&R

On June 22, 2009, Thomas filed a timely objection to the Magistrate Judge's R&R.  (Doc. 28.)  Thomas objects to both of the issues resolved by the Magistrate Judge in his R&R – namely, that the supplemental record of the prior SSI benefits proceedings should be stricken from the record and that the ALJ's decision finding that Thomas did not satisfy Listing 12.05(C) was supported by substantial evidence.  (*Id.*)  With respect to the first issue, Thomas argues that the supplemental record should be considered because the ALJ failed to properly develop the record.  As to the second issue, Thomas argues that his (1) 1994 finding of mental retardation prior to the age of 22; (2) valid full scale IQ score of 70; and (3) additional and significant impairments of developmental reading disorder and dysthymic disorder satisfy the requirements of Listing 12.05(C), mental retardation.  Thomas further argues that the Commissioner is attempting to improperly insert an additional requirement into Listing 12.05(C), i.e., that there must be a diagnosis of mental retardation after the age of 22 in order to satisfy the first component of Listing 12.05(C). (*Id.*)

### 4. The Commissioner's Response to Thomas' Objections

On July 20, 2009, the Commissioner filed a response to Thomas's objections.  (Doc. 30.)

-5-

In his response, the Commissioner argues that the Court should adopt the R&R, because: (1) Thomas' attorney affirmatively waived his opportunity to submit the supplemental record to the ALJ and he has not advanced a "sentence six" request for the Court to consider new evidence pursuant to 42 U.S.C. § 405(g); and (2) substantial evidence supports the conclusion that Thomas cannot satisfy the first component of Listing 12.05(C), the diagnostic description, based on the determinations of the doctors who evaluated Thomas. (*Id*.)

## II.    **STANDARD OF REVIEW**

In cases that are referred to a magistrate judge for preparation of a R&R, the Federal Magistrate Act requires that a district court conduct a de novo review only of those portions of a R&R to which the parties have made an objection. 28 U.S.C. § 636(b)(1)(C). The district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

A district court's review of a final administrative decision of the Commissioner made by an ALJ in a Social Security action, however, is not de novo. Rather, a district court is limited to examining the entire administrative record to determine if the ALJ applied the correct legal standards in reaching his decision and if there is substantial evidence in the record to support his findings. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).

"Substantial evidence" is evidence that a reasonable mind would accept to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence standard requires more than a scintilla, but less than a preponderance of the evidence. *Id.* To determine whether substantial evidence exists to support the ALJ's decision, a district court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Further, a district court must not focus, or base its decision, on

-6-

a single piece of evidence.  Instead, a court must consider the totality of the evidence on record.  *See Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

In fact, if there is conflicting evidence, a district court generally will defer to the ALJ's findings of fact.  The Sixth Circuit instructs that, "[t]he substantial evidence standard allows considerable latitude to administrative decision makers.  It presupposes that there is a *zone of choice* within which the decision maker can go either way without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)) (emphasis added).  Accordingly, an ALJ's decision "cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Nevertheless, even if an ALJ's decision is supported by substantial evidence, that decision will not be upheld where the Commissioner "fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## III.   DISCUSSION

As highlighted above, Thomas raised two issues before the Magistrate Judge and now objects to the portions of the R&R in which the Magistrate Judge resolved these issues in favor of the Commissioner.  Below, the Court briefly addresses each issue and explains why the Commissioner should prevail.

### A.   THE SUPPLEMENTAL RECORD

The first issue is whether the Magistrate Judge correctly concluded that the supplemental record of Thomas' prior SSI benefit proceedings should be stricken from the record of this case.

-7-

### 1.      The Parties' Arguments Regarding the Supplemental Record

As noted above, Thomas contends that the ALJ breached her duty to develop the record by failing to include the records of his prior SSI benefit proceedings.  Specifically, he argues as follows:

> Where, as here, there is relevant pertinent evidence readily available to the ALJ and the ALJ refuses to consider that evidence, the ALJ has failed her duty to develop the record.  *See Johnson v. Secretary of Health & Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986) (when the evidence suggests that the claimant may well meet a listed impairment, the ALJ must develop the evidence in order to determine whether the listing is met).

(Doc. 28 at 1.)

In his response to Thomas' objections, the Commissioner first notes that ALJ Rini expressly stated during the hearing that she would not include Thomas' prior SSI benefits determinations in the record and asked Thomas' attorney, Ms. Braun, if she objected to closing the record at the end of the hearing.  (Doc. 30 at 1.)  In response to ALJ Rini, Ms. Braun stated that she would not offer additional evidence and had no objection to closing the record at the conclusion of the hearing.  The Commissioner argues that "[b]ecause the evidence in the 'supplemental record' was not before the ALJ, and the Appeals Council denied Plaintiff's request for review in May 2008 (Tr. 4), the Magistrate [Judge] was correct in striking the 'supplemental record' from the record." (*Id*.)  Next, the Commissioner disagrees with Thomas' contention that the ALJ failed to develop the record, and states that, even if she had failed to develop the record, the remedy for that deficiency is not supplementing the record at this stage of the proceedings.  (*Id*. at 2.)  Instead, the Commissioner argues that "42 U.S.C. § 405(g) (sentence six) is the exclusive method by which a reviewing court can consider new evidence, and that statute requires an affirmative showing of newness, good cause, and materiality." (*Id*.)  Finally, the Commissioner argues that, in any event, the supplemental record does not support Thomas' argument that he meets the requirements of Listing 12.05(C) because the

doctors who reviewed Thomas' case in 2000 diagnosed him with "borderline intellectual functioning," not "mental retardation." (*Id*. at 2-3.)

### 2.    Analysis of the Supplemental Record Issue

It is well-established that the ALJ has a duty to develop the record due to the nonadversarial nature of Social Security benefits proceedings. *See Heckler v. Campbell*, 461 U.S. 458, 470 (1983) (noting the ALJ's "basic obligation" "to develop a "full and fair record") (Brennan, J., concurring). This duty is particularly important when the claimant is acting *pro se* before the ALJ. *See Lashley v. Sec. of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983). The ALJ's duty to develop the record is counterbalanced, however, by the principles that the ALJ "must not become a partisan and assume the role of counsel[,]" *id*. (citing *Perales*, 402 U.S. at 1432), and that the "claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits[,]" *Trandafir v. Comm'r of Social Sec.*, 58 Fed. Appx. 113, 115 (6th Cir. 2003) (unpublished) (citing 20 C.F.R. s. 404.1512(a)).  Further, in *Lashley*, the Sixth Circuit stated that "[t]here is no bright line test for determining when the administrative law judge has assumed the role of counsel or failed to fully develop the record. The determination in each case must be made on a case by case basis." 708 F.2d at 1052.

As the Sixth Circuit recently explained, the claimant and his or her counsel bear the burden of introducing record evidence sufficient to support a finding that benefits should be awarded. *Wright-Hines v. Comm'r of Social Sec.*, – F.3d –, 2010 WL 616437, *3 (6th Cir. Feb. 23, 2010).  In *Wright-Hines*, the claimant appealed her denial of benefits on a number of grounds, including the assertion that the ALJ had erroneously found that she had relevant past work experience. *Id*. at *2-3. Specifically, the claimant alleged that the record did not support the ALJ's finding that her approximately three-month stint as a cashier was long enough to qualify as relevant past work

experience. *Id*. at *2. The Sixth Circuit analyzed her argument as follows:

> We conclude the ALJ's determination that Wright-Hines had past relevant work as a cashier was supported by substantial evidence. Two independent sources in the written record support such a finding . . . .
>
> Those sources were part of the record prior to the hearing before the ALJ; one of those sources was the Social Security Administration's explanation of the very decision Wright-Hines asked the ALJ to review. Thus, **Wright-Hines (who was represented by counsel at the ALJ hearing) should have been fully aware of the record's indication of her past relevant work as a cashier, and it was her burden to rebut that conclusion in order to prevail before the ALJ. Yet she never introduced any evidence that her work as a cashier lasted less than three months.** Indeed, the first time she mentioned this point was in her Objection below to the Magistrate's R & R, and then only in passing. The ALJ therefore was presented with uncontradicted evidence that Wright-Hines had past relevant work as a cashier.
>
> We agree with the dissent that the ALJ has an inquisitorial duty to seek clarification on material facts, and that the ALJ would have been well-advised to confirm Wright-Hines' past work as a cashier at the hearing. But **we cannot excuse Wright-Hines' failure to provide us with the factual record we need to find in her favor.** To do so would be to treat Wright-Hines differently than other Social Security claimants for no other reason than that she proceeded pro se in the district court and on appeal. However, **the focus of our inquiry is what occurred in the administrative proceedings, when she was represented by counsel**. On this record, we cannot say that the ALJ utilized an incorrect legal standard or that substantial evidence did not support the ALJ's conclusions.

*Id*. at *2-3 (emphasis added). Thus, the Sixth Circuit's balances the ALJ's duty to develop the record with his or her obligation not to assume the role of counsel. *See also Kelly v. Comm'r of Social Sec.*, 314 Fed. Appx. 827, 831 (6th Cir. 2009) (unpublished) (rejecting the claimant's argument under *Lashley* that the ALJ failed to develop the record by noting that "*Lashley* concerned an ALJ's duty in the case of a *pro se* claimant . . . whereas Mrs. Kelly was represented by counsel at the hearing. Mrs. Kelly has made no showing that she was unable for any reason to present her case.").

Here, unlike in *Lashley*, Thomas was represented by counsel – Ms. Braun -- at the hearing before the ALJ. In addition, similar to *Kelly*, the record in this case shows that Thomas had every

-10-

opportunity to submit the supplemental record for the ALJ's consideration at that time.  In fact, ALJ Rini practically invited counsel to raise the issue of the supplemental record during the hearing. After listing the exhibits to be admitted into evidence, ALJ Rini asked Ms. Braun, "Counsel, can I close the record at the end of the hearing?"  (Doc. 9 at 150.)  Ms. Braun responded, "Yes, you can." (*Id*.)  In the next paragraph of the transcript of the hearing, ALJ Rini expressly stated that she had not admitted any of the records of Thomas' prior benefits determinations into the record of this proceeding because she "didn't review them."  (*Id*. at 151.)  Had Ms. Braun wished to include the documents she is now seeking to introduce as the supplemental record, she could have done so by raising an objection at that time.  Under these circumstances, this is not a case in which the ALJ has failed to adequately develop the record.  Instead, like *Wright-Hines*, it is a case in which the claimant and his counsel neglected to introduce all of the evidence upon which they now seek to rely.[4] Accordingly, the Court **ADOPTS** the Magistrate Judge's conclusion in the R&R with respect to striking the supplemental record (Doc. 17) and **OVERRULES** Thomas' first objection.[5]

### B.    SUBSTANTIAL EVIDENCE REGARDING LISTING 12.05(C)

Thomas' second objection to the R&R is that substantial evidence does not support the ALJ's

---

[4]  Thomas' citation to *Johnson*, 794 F.2d at 1111, is not persuasive.  Like *Wright-Hines*, *Johnson* cites *Lashley* for the standard for determining whether an ALJ has failed to develop the record.  Although the Court in *Johnson* held that the ALJ failed to develop the record, the opinion includes very little analysis of the issue and offers no compelling reason to reach the same conclusion in this case, especially in light of the Sixth Circuit's much more recent and more factually analogous decision in *Wright-Hines*.

[5]  The Court acknowledges that the Commissioner argued, in the alternative, that, even if the ALJ erred by excluding the supplemental record, the remedy for that error is not to introduce it in this case in the absence of a proper request pursuant to 42 U.S.C. § 405(g) (sentence six) by Thomas.  (Doc. 30 at 2.)  While the Commissioner's argument appears to be well-taken, *see Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996), the Court need not, and does not, resolve this question in light of the finding that the ALJ did not fail to adequately develop the record.

determination that Thomas is not entitled to SSI benefits pursuant to Listing 12.05(C), mental retardation. This objection goes to the merits of Thomas' claim for SSI benefits, and turns on whether there was substantial evidence to support the ALJ's finding that Thomas does not satisfy the requirements of Listing 12.05(C).

### 1.      Listing 12.05(C): Applicable Law

Thomas is "disabled" under the Social Security Act if "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Consequently, he bears the burden of demonstrating "(1) the existence of a medically determinable physical or mental impairment . . . that had lasted or could be expected to last for a continuous period of not less than twelve months, and (2) that such impairment(s) render [him] unable to engage in any substantial gainful activity." *Daniels v. Comm'r of Soc. Sec.*, 70 Fed. Appx. 868, 871 (6th Cir. 2003) (unpublished) (citing 42 U.S.C. § 1382c(a)(3)(A), (B)). In determining whether Thomas can engage

in "substantial gainful activity," the Commissioner uses the familiar five-step progressive analysis.[6]

Listing 12.05(C) arises at step three of five-step analysis – i.e., whether the claimant can demonstrate

that his impairment has existed for a continuous period of not less than twelve months and meets or

equals a listed impairment in 20 C.F.R. Part 404, Suppart P, Appendix 1.  20 C.F.R. § 404.1520(d).

Listing 12.05(C)[7] reflects the listed impairment "mental retardation" and provides as follows:

12.05 Mental retardation.  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
. . .

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; . . .

"In order to be found disabled based upon a listed impairment, the claimant must exhibit all the

---

[6]  The five-step analysis proceeds as follows:

(1)    Thomas must establish that he was not engaged in substantial gainful employment at the time of his disability application;
(2)    Thomas must establish that he suffers from a severe impairment;
(3)    Thomas must establish that his impairment meets the durational requirement and meets or equals a listed impairment in 20 C.F.R. Part 404, Suppart P, Appendix 1 (20 C.F.R. § 404.1520(d);
(4)    If Thomas' impairment does not meet or equal a listed impairment, the Commissioner would review his residual functional capacity and relevant past work; and
(5)    If Thomas cannot perform past work, the Commissioner will consider other factors to determine  if he can perform other work in the economy – if not, then he is disabled.

See Daniels, 70 Fed. Appx. at 871.

[7]  Sub-section A, B, and D are not at issue in this case.

-13-

elements of the listing." *Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6ᵗʰ Cir. 2003).

In the Sixth Circuit, it is well-established that Listing 12.05(C) requires the claimant to satisfy *both* the diagnostic description in the introductory paragraph of 12.05 *and* the two components of sub-section C.  *See Foster v. Halter*, 279 F.3d 348, 354 (6ᵗʰ Cir. 2001); *see also Hayes v. Comm'r of Soc. Sec.*, Case No. 09-5409, 2009 WL 4906909, at *2 (6ᵗʰ Cir. Dec. 18, 2009) (quoting *Foster*); *Harris v. Comm'r of Soc. Sec.*, Case No. 3:08cv472, 2010 WL 749654, at *9 (S.D. Ohio Mar. 1, 2010) (quoting *Foster*); *Alcorn v. Astrue*, Case No. 5:07cv212 DCR, 2008 WL 1790192, at *4 (E.D. Ky. Apr. 18, 2008) ("The Sixth Circuit has repeatedly clarified that a finding of presumptive disability under Listing 12.05C requires the claimant to satisfy the specific factors of paragraph C as well as the diagnostic description in the introductory paragraph. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir.2001) (holding that "[a] claimant must demonstrate that her impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder")).[8]

With respect to the requirements of the introductory paragraph, "a claimant must demonstrate three factors to satisfy the diagnostic description: (1) subaverage intellectual functioning; (2) onset before age twenty-two; (3) and adaptive skills limitations."[9]  *Hayes*, 2009 WL 4906909 at *2.  The requirements of the introductory paragraph track the definition of mental retardation in the

---

[8]  Independently satisfying the diagnostic description in the introductory paragraph is not a requirement in the Eighth and Ninth Circuit, however.  *See Christner v. Astrue*, 498 F.3d 790, 793 (8ᵗʰ Cir. 2007); *Fanning v. Bowen*, 827 F.2d 631, 633 (9ᵗʰ Cir. 1987); *see also Lewis v. Astrue*, Case No. C 06-6608 SI, 2008 WL 191415, *5 (N.D. Cal. Jan. 22, 2008) (citing *Christner* and *Fanning*).

[9]  "Adaptive skills limitations" refers to "a claimant's effectiveness in areas such as social skills, communications skills, and daily-living skills." *Hayes*, 2009 WL 4906909 at *5 (citing *Heller v. Doe*, 509 U.S. 312, 329 (1993) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, 28-29 (3d rev. ed. 1987)).

*Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition ("DSM-IV"), and the Sixth Circuit references the DSM-IV when evaluating disability claims. *Burrell v. Comm'r of Soc. Sec.*, No. 99-4070, 2000 U.S. App. LEXIS 33161, at *4 (6th Cir. Dec. 8, 2000) (citing *Brown*, 948 F.2d at 270).

If the claimant satisfies the diagnostic description of the introductory paragraph, then he must establish both components of sub-section (C): he must have (1) a valid IQ score below 71; and (2) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *See West v. Comm'r of Soc. Sec.*, 240 Fed. Appx. 692, 697-98 (6th Cir. July 5, 2007) (unpublished).

As the regulation indicates, the two components of sub-section C address the *severity* of the impairment: the Social Security Act recognizes that many individuals with mild mental retardation are still able to work and, accordingly, a claimant who satisfies the diagnostic description must still produce a valid IQ score below 71 *and* demonstrate "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05(C); *see also Muntzert v. Astrue*, 502 F. Supp. 2d 1148, 1157-58 (D. Kan. 2007) ("DSM-IV and Listing 12.05(C) assume many, if not most, mildly mentally retarded individuals will be able to work. However, they recognize that some mildly mentally retarded individuals may be unable to work where they have 'a physical or other mental impairment imposing an additional and significant work-related limitation of function.' 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05(C).").

### 2.  Listing 12.05(C): Analysis of the Arguments

Thomas' objection implicates the relationship between the introductory paragraph and sub-section C.  That is, while Thomas relies heavily on his sub-71 IQ, the Commissioner maintains that, regardless of Thomas' IQ, he has failed to satisfy the diagnostic description of Listing 12.05,

mental retardation.  While the Court notes that Thomas' position is understandable given the language of the Listing 12.05(C), and somewhat elegant in its simplicity, the Court ultimately concludes that the ALJ applied the appropriate legal standard, and that substantial evidence supports the finding that Thomas did not satisfy the diagnostic description in the introductory paragraph.  The Court acknowledges, however, that the latter conclusion is a very close question.

### a.  The Legal Standard

With respect to the question of the appropriate legal standard,[10] Thomas argues that there are three components of Listing 12.05(C), and that he satisfies each.

> The evidence of record supports a finding that Mr. Thomas satisfies all three components of Listing 12.05C.  The first component requires that Mr. Thomas' mental condition manifested during his developmental period, prior to age 22. . . . The Social Security Administration acknowledged that Mr. Thomas suffered from mental retardation and benefits were awarded as of December 1, 1994.  (Tr. 12.) This uncontroverted evidence of record supports a finding that Mr. Thomas' mental retardation manifested during his developmental years.
>
> Mr. Thomas' current IQ testing revealed a full scale IQ of 70, verbal IQ of 72 and performance IQ of 72.  (Tr. 119.) . . . There is no indication in the record that Mr. Thomas' current IQ scores are invalid.  Mr. Thomas' full scale IQ of 70 satisfies the second component of Listing 12.05C.
>
> Mr. Thomas has additional severe impairments of illiteracy and dysthymic disorder. . . . Dr. Felker diagnosed developmental reading disorder.  (Tr. 120.)  The ALJ also found this a severe impairment.  (Tr. 116.)  Additionally, Dr. Felker found that Mr. Thomas suffered from dysthymic disorder.  Dr. Felker noted that Mr. Thomas' depressive symptoms is one of the factors which restricts his employability.  (Tr. 120.)  Mr. Thomas' developmental reading disorder and dysthymic disorder are additional significant impairments which satisfy the third component of Listing 12.05C.

---

[10]  As explained above, the ALJ's decision will not be upheld where the Commissioner "fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Bowen*, 478 F.3d at 746.  Accordingly, the Court must address whether the ALJ applied the proper legal standard in making her determination regarding Listing 12.05(C).

(Doc. 24 at 6-7.) He further argues that, because she discussed the fact that Thomas has never been *diagnosed* as mentally retarded since the age of 18, the ALJ improperly *added* a legal requirement to Listing 12.05(C) – i.e., a *diagnosis* of mental retardation. (*Id*. at 7.)

The Commissioner acknowledges "that the regulations do not require a diagnosis of mental retardation after age 18[.]" (Doc. 30 at 3.) He notes, however, that this does not excuse Thomas from satisfying the diagnostic description of mental retardation in the introductory paragraph of Listing 12.05(C). Indeed, in his opening brief, the Commissioner states as follows:

> To satisfy the first prong of this test [i.e., the diagnostic description], however, a claimant must establish that he suffers actual mental retardation, not merely a learning disorder or borderline intellectual functioning. *See* 71 Fed. Reg. 10419, 10423 (2006) ("you must have mental retardation that satisfies the introductory paragraph . . . in addition to the criteria in one of the paragraphs that follows"). IQs of about 70 or below generally denote significant subaverage intellectual functioning. *DSM-IV-TR* at 41. IQs between 71 and 84 generally reflect borderline intellectual functioning, although "it is possible to diagnose Mental Retardation in individuals with IQs between 70 and 75 who exhibit significant deficits in adaptive behavior. Conversely, mental retardation is not diagnosed in an individual with an IQ lower than 70 if there are no significant deficits or impairments in adaptive functioning." *Id*. at 41-42, 740; *see also* [*Elam*, 348 F.3d at 126], (citing doctor's assessment that claimant operated in borderline range of intellectual functioning, despite intelligence test scores that, standing alone, indicated mental retardation). It is also noted that there is a measurement of error of approximately five points in assessing IQ,[11] and differentiating between borderline intellectual functioning and mild mental

---

[11] It is important to note that the Commissioner is arguing that the margin of error should be considered in the context of the introductory paragraph/diagnostic description analysis, *not* the sub-section C analysis of whether Thomas' IQ scores are valid. For the compelling reasons recently explained in *Harris v. Comm'r of Soc. Sec.*, Case No. 3:08cv472, 2010 WL 749654, at *10 (S.D. Ohio Mar. 1, 2010), it would be improper to use the scientifically recognized margin of error to adjust (up or down) an IQ score in the context of the sub-section C analysis. In short, "[i]ncorporating a margin of error into a claimant's IQ test results would effectively expand the requisite I.Q. under [L]isting 12.05C . . . [and] would alter the range of I.Q.s which satisfy [Listing 12.05C] in contradiction of federal regulations . . . .". *Harris*, 2010 WL 749654 at *10 (quoting *Dover v. Apfel*, 2000 WL 135170 at *2 (10th Cir. 2000) (omitting citations and internal quotations; brackets in *Dover*)). Since the diagnostic description does not reference an IQ score or range, incorporating a margin of error into the introductory paragraph analysis does not present this problem.

retardation requires consideration of all available information. *See DSM-IV-TR* at 41, 48.

(Doc. 25 at 7 (footnote added).)  Accordingly, the Commissioner argues that Thomas is ignoring the threshold requirement of Listing 12.05(C) – that Thomas suffers actual mental retardation.  The Commissioner contends that substantial evidence supports the ALJ's determination that Thomas cannot satisfy this threshold requirement because he does not suffer actual mental retardation.

The Commissioner's legal position comports with applicable Sixth Circuit law.  As discussed above, in the Sixth Circuit, the claimant must satisfy *both* the diagnostic description in the introductory paragraph, *and* the two components of sub-section C.  *See Foster*, 279 F.3d at 354 ("As the Commissioner has pointed out, recent amendments to the regulations further clarify that a claimant will meet the listing for mental retardation only '[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria . . . .' 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A) *as amended by* 65 Fed. Reg. 50746, 50776 (August 21, 2000) (emphasis added)."); *see also Hayes*, 2009 WL 4906909 at *2 (quoting *Foster*); *West*, 240 Fed. Appx. at 697-98 (citing *Foster*); *Cooper v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 450, 452 (6th Cir. 2007) (unpublished) (citing *Foster*); *Daniels*, 70 Fed. Appx. at 872 n.1 (citing *Foster* and stating that "Plaintiff argues on appeal that listing 12.05(C) only requires a claimant to provide an I.Q. score of 60-70 and possess an additional limitation, i.e., the diagnostic description in the introductory paragraph of Listing 12.05(C) does not impose additional required showings.  However, we have already rejected this argument [in *Foster*].").  Accordingly, the flaw in Thomas' argument is that he ignores the threshold requirement of Listing 12.05 – a finding that he presently suffers actual mental retardation.  While he  correctly notes that the Commissioner previously awarded benefits on the basis of mental retardation in 1994, this fact is only sufficient to satisfy one aspect of the

-18-

introductory paragraph – onset of the impairment prior to age 22.

To the extent, moreover, that Thomas argues that his recent sub-71 IQ score conclusively establishes the diagnostic description, he similarly misses the mark. In *Cooper*, the Sixth Circuit explained that an IQ score below 71 is *not* sufficient to satisfy the diagnostic description of mental retardation:

> Cooper first argues that the ALJ erred in finding that he did not meet or equal the requirements for showing mental retardation under Listing 12.05C. When tested at age 23 years, Cooper had IQ scores of 77 verbal, 70 performance, and 72 full scale on the Wechsler Adult Intelligence Scale (3d ed.). **Yet, it is not enough for a claimant to point to one IQ score below 71; the claimant must also satisfy the "diagnostic description" of mental retardation in Listing 12.05.** *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). It is undisputed that no psychologist has diagnosed Cooper with mental retardation. The examiner and clinical psychologist who tested him diagnosed him instead as borderline intellectual functioning. Moreover, Cooper performed a number of common activities inconsistent with mental retardation, including semiskilled work for a number of years, playing guitar, and riding a motorcycle. There is substantial evidence in the record that Cooper does not meet the diagnostic description.

*Cooper*, 217 Fed. Appx. at 452 (emphasis added). In fact, numerous Sixth Circuit decisions have upheld the ALJ's finding that the introductory paragraph of Listing 12.05 is not satisfied in spite of an IQ score below 71. *See Hayes*, 2009 WL 4906909 at *3; *Blanton v. Comm'r of Soc. Sec.*, 118 Fed. Appx. 3, 7 (6th Cir. 2004) (unpublished); *Elam*, 348 F.3d at 126-27; *Cooper*, Fed. Appx. at 452-53; *Daniels*, 70 Fed. Appx. at 873 (While the ALJ recognized the claimant's IQ score of 67, "he determined that she nevertheless was not mentally retarded, pointing out Dr. Berg's observation that she clinically appeared to function at a level exceeding her test score."); *West*, 240 Fed. Appx. at 697-98; *Foster*, 279 F.3d at 355.

With respect to Thomas' argument that a diagnosis of mental retardation after age 22 is not a requirement of the introductory paragraph of Listing 12.05, the Commissioner has, appropriately, conceded this point of law. There is no authority for the proposition that Thomas must be able to

-19-

point to a *diagnosis* of mental retardation in order to satisfy the diagnostic description.  There is, however, ample Sixth Circuit authority for the proposition that the Commissioner does advance – i.e., that a clinical psychologist's diagnosis of the claimant as outside the definition of "mental retardation" is an important factor for the ALJ to consider in determining whether the claimant satisfies the introductory paragraph of Listing 12.05(C).  *See, e.g., Alcorn*,  2008 WL 1790192, at *5 (discussing *West*, 240 Fed. Appx. at 698-99 and *Daniels*, 70 Fed. Appx. at 872 as cases in which the court approved of the ALJ's significant reliance on the absence of a diagnosis of mental retardation in the context of the introductory paragraph analysis); *Griffey v. Astrue*, Case No. 08cv786, 2009 WL 4396520, at *14 (S.D. Ohio Dec. 1, 2009) ("It is significant that no medical source of record thought Plaintiff met the diagnostic criteria for mental retardation, which are the same criteria necessary to satisfy [the] introductory paragraph of Listing 12.05C."); *Watts v. Astrue*, Case No. 6:08cv293-JBC, 2009 WL 3764044, at *4 (E.D. Ky. Nov. 10, 2009) ("Importantly, even if the test scores were valid, not a single examiner said that the plaintiff met the description of mental retardation necessary to meet the 12.05 standard."); *Jones v. Comm'r Soc. Sec.*, Case No. 08cv562, 2009 WL 3498809, at *6 (W.D. Mich. Oct. 26, 2009) (citing *Cooper* and *Daniels* and quoting *Crayton v. Callahan*, 120 F.3d 1217, 1219-20 (11th Cir. 1997): "a valid IQ score need not be conclusive of mental retardation, where the IQ score is inconsistent with other evidence . . . in the record concerning the claimant's daily activities and behavior").  As the Commissioner indicates in the portion of his opening brief quoted above, significant reliance on a diagnosis of something other than "mental retardation," such as "borderline intellectual functioning," is particularly sensible in light of the fact that the diagnostic description of mental retardation in the introductory paragraph of Listing 12.05 tracks the DSM-IV.  Indeed, the DSM-IV is "one of the leading texts in medicine" and, as noted above, it is used by Sixth Circuit courts to evaluate disability claims.  *Burrell*, 2000

-20-

U.S. App. LEXIS 33161, at *4; *Chandler v. Astrue*, No. 08-2265, 2010 U.S. Dist. LEXIS 1503, at

*17 (N.D. Ohio Jan. 8, 2010) ("whether or not Plaintiff meets the requirements of the DSM-IV is

relevant to whether or not she meets Listing 12.05.").

Accordingly, while a diagnosis of mental retardation is not a requirement of the introductory

paragraph of Listing 12.05(C), the ALJ was entitled to give substantial weight to the fact that Dr.

Felker diagnosed Thomas with borderline intellectual functioning, not mental retardation, despite

his full-scale IQ of 70.  To be clear, however, there is also no authority for the proposition that the

absence of a diagnosis of mental retardation is necessarily fatal to the claimant's case with respect

to the introductory paragraph of Listing 12.05(C).  Instead, the ALJ must evaluate the entire record

and determine whether the claimant satisfies the diagnostic description, and, upon review, this Court

must decide whether substantial evidence supports the ALJ's determination.

### b.    Substantial Evidence Review

Here, in her written decision, the ALJ relied on Dr. Felker's evaluation of Thomas, as well

as Dr. Haskins and Dr. Zwissler's opinions regarding Thomas' mental capacity and functional

abilities, and Thomas' submissions and testimony at the hearing.  All three doctors were aware of

Thomas' full-scale IQ score of 70, but diagnosed Thomas with borderline intellectual functioning,

not mental retardation.   Dr. Felker also diagnosed Thomas with dysthymic disorder and

developmental reading disorder, and reported that Thomas' reading skills are "very limited," his

"insight and judgment are marginal," his "memory function [is] quite restricted in nearly all areas,"

and he "gives the impression that he can't manage his affairs."   (Record at 118-120.)   In his

summary, Dr. Felker stated as follows:

> Based on the information gathered during the assessment it appears that Suvare
> [Thomas] shows moderate impairment in his ability to concentrate and attend to
> tasks, particularly for sustained activities.  His ability to understand and follow

-21-

instructions and to carry out routine tasks appears to be mildly to moderately restricted.  His ability to relate to others and deal with the general public shows evidence of some mild impairment. Suvare [Thomas] indicates that he is not very socially active but does have friends in the neighborhood with whom he plays basketball.  This seems to be his favorite activity.  His ability to relate to work peers, supervisors and to tolerate the stressors of employment is judged to be moderately restricted.  Depressive symptoms, borderline intellect and very limited reading skills are factors which restrict his employability.

Should benefits be granted, he would need assistance in management.

(Record at 120.)  At the hearing, Thomas explained that he has always lived with his mother and depends on her supervision.  He said that he was fired from his last (and only) job because he could not keep up with the pace of the work – operating a machine that folded boxes.  He also indicated that he is able to wash his own dishes, clean his room, sweep, and take out the trash.  He does not drive, but he is able to take the bus.  With respect to his symptoms of depression, Thomas testified that he has never sought treatment from a doctor and turns to his brother for comfort when he is feeling blue.  His responses to the ALJ's questions regarding his ability to count money suggested that, although he has a basic understanding of numerical value, he cannot make change reliably.  Finally, the Vocational Expert testified that a hypothetical person matching Thomas' limitations profile would be able to perform the jobs of car wash attendant, busser, and cleaning/housekeeping.

Based on the record evidence, the ALJ concluded that Thomas does not satisfy the diagnostic description for mental retardation in Listing 12.05.[12]  That is, the ALJ found that he does not have

---

[12]  As mentioned above in § III(A)(1), the Commissioner argues that, even if the Court were to decide to consider the supplemental record (Doc. 17), the evidence Thomas has submitted in the supplemental record does not support Thomas' position on the merits, and, in fact, bolsters the ALJ's conclusion.  For example, the supplemental record includes additional doctors who diagnosed Thomas in 2000 with borderline intellectual functioning, not mental retardation and other evidence relating to Thomas' activities and limitations that are similar to the facts in the record currently.  Upon review of the supplemental record, the Court agrees with the Commissioner on this point – if the supplemental record were to be considered, which it is not, it would not change the Court's conclusion.

"significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." Taken together, Thomas' IQ score; acknowledged dependence on his family; apparent inability to manage his own affairs; moderate impairments and restrictions with respect to, e.g., concentration, memory, social activity, and pace; diagnosis of dysthymic disorder; developmental reading disorder; and borderline intellectual functioning indicate that substantial evidence existed to contradict the ALJ's conclusion and to support the finding that Thomas *satisfied* the diagnostic definition of mental retardation. On the record before her, the ALJ could have reached the opposite conclusion. On the other hand, the ALJ determined that Thomas does not satisfy the diagnostic description for "mental retardation" based on the following record evidence: three doctors diagnosed Thomas as borderline intellectual functioning (as opposed to mental retardation); Thomas acknowledged that he can function in some areas, e.g., he can clean, wash dishes, play basketball, and ride the bus; and Dr. Felker characterized all of his limitations and restrictions as "mild" or "moderate." In light of this evidence, the Court cannot conclude that the ALJ did not have substantial evidence to support her finding that Thomas does not have "significantly subaverage general intellectual functioning with deficits in adaptive functioning"; the ALJ's decision that Thomas does not satisfy the Listing 12.05 diagnostic definition

for mental retardation was based on substantial evidence.[13]

This is a case that demonstrates the deferential nature of the substantial evidence standard; based on the Court's review of the record, it does not seem that the preponderance of the evidence supports the ALJ's conclusion. It is beyond dispute, however, that the Court need not *agree* with

---

[13] Having concluded that substantial evidence supports the ALJ's determination that Thomas did not satisfy the threshold requirement of Listing 12.05, the Court need not analyze the two components of sub-section C: (1) a valid sub-71 IQ score and (2) "a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]" Briefly, however, it appears that Thomas satisfied the first component but not the second. First, it is undisputed that Thomas does not have any physical impairments. Second, Dr. Felker diagnosed Thomas with dysthymic disorder, developmental reading disorder, and borderline intellectual functioning. "Dysthymia is 'a less severe form of depression' whose 'signs and symptoms can be the same as in major depression, only less numerous and less severe.'" *Covucci v. Apfel*, 31 Fed. Appx. 909, 911 n.1 (6th Cir. 2002) (quoting L.R. RUSS, ET AL., ATTORNEYS MEDICAL ADVISOR § 49:5(a)(1994)). The ALJ determined that Thomas' dysthymia is not a severe impairment because of the nature of the disorder and because Thomas testified that he has never sought or received treatment for depression or dysthymia. Based on the definition and the evidence relating to dysthymia, there appears to be substantial evidence for the ALJ's decision on this point, and, therefore, dysthymia does not qualify as a mental impairment imposing an additional and significant work-related limitation of function. The ALJ used Thomas' developmental reading disorder to conclude that he is essentially illiterate. Illiteracy, however, should not be treated as a limitation *additional* to Thomas' mental retardation (assuming for the sake of this sub-subsection C analysis that Thomas satisfied the diagnostic description for mental retardation). While the Sixth Circuit has not directly addressed this question, it has indicated that "additional" has its common and ordinary meaning, *see Mowery v. Heckler*, 771 F.2d 966, 971 (6th Cir. 1985); *Hamilton v. Sec'y of Health & Human Servs.*, 842 F.2d 331, at *3 (6th Cir. 1988), and other circuits that have addressed the issue directly have concluded that illiteracy cannot be an additional limitation under 12.05(C), *see Hartzog v. Barnhart*, 189 Fed. Appx. 98, 100 (3d Cir. 2006) (finding that the claimant "failed to establish that his illiteracy is 'another impairment, in addition to [his] mental retardation, that imposes an additional and significant work-related limitation of function.'" (citing *Williams v. Sullivan*, 970 F.2d 1178, 1184 (3d Cir. 1992)). "Hartzog's illiteracy appears to be a symptom or manifestation of his mental retardation, not an additional impairment." (internal citation omitted)). Finally, because mental retardation is a more severe mental impairment than borderline intellectual functioning, it would be illogical to treat borderline intellectual functioning as an additional limitation. Accordingly, even if the ALJ erred with respect to her conclusion regarding the diagnostic definition of mental retardation, there was still substantial evidence to support a denial of benefits under Listing 12.05(C) because Thomas did not present substantial evidence of an additional and significant work-related limitation of function.

the ALJ, but must merely find substantial evidence for the ALJ's conclusion.  *Longworth*, 402 F.3d at 595; *Jones*, 336 F.3d at 477 (emphasizing that an ALJ's decision "cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ.").  The ALJ's decision was within her "zone of choice."   *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).  For the reasons discussed above, the Court **ADOPTS** the Magistrate Judge's conclusion in the R&R.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court **ADOPTS** the Magistrate Judge's R&R regarding the supplemental record (Doc. 9).  Accordingly, it is hereby stricken from the record of this case.  Further, the Court finds that the ALJ's decision that Thomas was not within Listing 12.05(C), mental retardation, as that impairment is defined by the Social Security Act and the regulations promulgated thereunder, was reached by applying the correct legal standards and was supported by substantial evidence.  As such, for all of the above reasons, the Court **OVERRULES** Thomas's objections, **ADOPTS** the R&R, and **AFFIRMS** the final administrative decision of the Commissioner denying Thomas's application.


**IT IS SO ORDERED.**

                                                        **/s/Kathleen M. O'Malley**
                                                        **KATHLEEN McDONALD O'MALLEY**
**Dated: March 25, 2010**                               **UNITED STATES DISTRICT JUDGE**